## IN THE UNITED STATES DISTRICT COURT FOR
## THE WESTERN DISTRICT OF OKALHOMA

| | | |
|---|---|---|
| (1) W. BLAKE SONNE, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Case No. CIV-22-761-PRW |
| (1) VROOM AUTOMOTIVE LLC, a Texas limited liability company, d/b/a VROOM; (2) VROOM INC., a Delaware corporation, d/b/a VROOM; | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## FIRST AMENDED CLASS ACTION COMPLAINT

COMES NOW the Plaintiff, W. Blake Sonne, pursuant to FRCP 15(a)(1)(B)[1], and on behalf of himself and the Class of others similarly situated as defined herein, hereby files this First Amended Class Action Complaint against the Defendants Vroom Automotive LLC and Vroom, Inc. (collectively referred to herein as "Defendants" or "VROOM"),  and alleges and states as follows:

---

[1] Plaintiff has the right to file an amended complaint pursuant to Rule 15(a)(1)(B) "as a matter of course" within 21 days in response to a motion to dismiss under Rule 12(b). Defendants' Motion to Compel Arbitration (ECF #10) is considered a motion to dismiss under Rule 12(b) and is now rendered moot as a matter of law. *See e.g.,* FRCP 15 (a)(1)(B); *Griggs v. Jornayvaz*, 2009 WL 1464408 at *1 (D. Colo. May 22, 2009) (The filing of an amended complaint moots a motion to dismiss directed at the superseded complaint). Courts treat motions to compel arbitration as either a motion to dismiss under Rule 12(b)(6), a motion to dismiss for improper venue under Rule 12 (b)(3), or a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), but are treated as a motion under Rule 12(b).

## PARTIES

1.      Plaintiff is and at all relevant times was a resident of Norman, Cleveland County, State of Oklahoma.  On or about April 21, 2022, Plaintiff purchased a 2020 Kia Telluride SX bearing VIN number 5XYPHC9LG018338 (the "Vehicle") from VROOM.

2.      Defendant Vroom Automotive LLC, d/b/a Vroom, is a Texas limited liability company with its principal place of business at 12053 Southwest Freeway, Stafford, Texas, 77477. It is the primary operating entity for Defendant Vroom Inc.'s purchases and sales of used vehicles. It may be served with process by serving its Registered Agent: Corporation Services Company, at 211 E. 7th, Suite 620, Austin, Texas 78701.

3.      Defendant Vroom Inc. is a Delaware corporation with its principal place of business at 12002 Southwest Fwy Meadows Place, TX, 77477-3030 United States.  Despite doing business in and throughout Oklahoma, Vroom Inc. does not have a registered agent for service of process in Oklahoma. It may be served with process by serving its Registered Agent: Corporation Services Company, at 211 E. 7th, Suite 620, Austin, Texas 78701.

## JURISDICTION AND VENUE

4.      Plaintiff asserts claims against Defendants under the federal Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq*, Oklahoma's Uniform Commercial Code for breach of express and implied warranties, 12A Okla. Stat. §§ 2-312 – 2-315 *et al.*, and the Oklahoma Consumer Protection Act, 15 Okla. Stat. §§ 751 *et seq*.

5.      This Court has subject matter and supplemental jurisdiction over Plaintiff's claims pursuant to because this is a class action limited to Oklahoma residents.  This Court

can exercise personal jurisdiction over Defendants because Defendants do business in Oklahoma, including reaching out to Oklahoma consumers, selling vehicles in Oklahoma, entering into contracts with persons in Oklahoma, delivering vehicles to Oklahoma consumers in Oklahoma, and maintaining a regular business presence in Oklahoma. Defendants have marketed, advertised, and made substantial sales in Oklahoma, and have sufficient minimum contacts with this state and/or sufficiently availed themselves of the markets of this state through its promotion, sales, and marketing within this state to render the exercise of jurisdiction by this Court permissible. Therefore, sufficient minimum contacts between Defendants and Oklahoma exist to support this Court's jurisdiction. *International Shoe v. Washington*, 326 U.S. 310 (1945); *see also* 12 Okla. Stat. § 2004.

6. Venue is proper in this court because a substantial part of the events or omissions giving rise to Plaintiff's claim occurred in Cleveland County, State of Oklahoma and within the Western District of Oklahoma.

## GENERAL ALLEGATIONS

7. In 2013, Defendants launched a website, vroom.com, through which they buy, sell, and trade used vehicles online nationwide. At their launch, Defendants saw the used automotive market as "ripe for disruption as an industry that is notorious for consumer dissatisfaction," with only 0.9% ecommerce penetration. Defendants see themselves as a "high-volume, low-margin business." Defendants own and operate vroom.com, an e-commerce platform for buying and selling used cars, which offers an alternative to a traditional car dealer. Defendants operate primarily online, but also buys and sells used vehicles through a physical storefront in Stafford, Texas. Defendants are licensed

independent vehicle dealers in Texas and Florida, and most of their transactions are executed under their Texas dealer license.

8.      In 2019, Defendants began to aggressively scale their business and accelerate their growth. As a result, Defendants nearly doubled their inventory, doubled their reconditioning capacity, and more than doubled their sales. Since the pandemic began, more and more consumers have been forced to purchase big- ticket items like cars completely online, sight unseen. In addition to a general reluctance to face the crowds of people at a brick-and-mortar auto dealership in a post-pandemic reality, component shortages and sustained demand have led to a spike in used-car prices, of which Defendants have been a beneficiary.

9.      In June 2020, Defendants became a public company through an initial public offering and have seen triple-digit year-over-year growth since the start of the COVID-19 pandemic.  Over the past three years, numerous consumer complaints have been filed against Vroom.  In Texas, for example, the Texas Attorney General recently filed suit against Defendants as a result of thousands of complaints from Vroom customers.  In reality, Defendants have not managed their growth effectively and have allowed inadequate systems and procedures to spiral into violations of consumers' rights.  These violations include misrepresenting that Defendants have obtained clear title before selling vehicles, failing to disclose systemic delays in processing title and registration, and failing to disclose higher insurance premium requirements for non-Texas consumers.

10.      In 2018, Defendants sold approximately 10,000 vehicles online. In 2019, Defendants sold nearly 19,000 vehicles online. In 2020, Defendants sold approximately

34,488 vehicles online, an 82% increase year-over-year. In only the first three quarters of 2021, Defendants sold approximately 53,455 vehicles, a 127% year-to-date increase.



Note: For a description of how we define and calculate this metric, please see "Management's Discussion and Analysis of Financial Condition and Results of Operations."

In short, Defendants' growth has been exponential in the last three years of operation.

11.    For consumers considering a vehicle purchase, Defendants offer an online catalog of thousands of previously owned vehicles, promising delivery anywhere in the continental United States. Approximately 80% of the used vehicles listed for sale on vroom.com were purchased directly from consumers.

12.    Defendants tout a "no haggle, no pressure" experience accessible from any  device.  Defendants give consumers the ability to filter the selection of vehicles by make, model, mileage, color, and other factors. Once a consumer has selected a vehicle, they can review the vehicle's profile, which includes approximately 20 photographs of the

vehicle, a description of the vehicle and its features, ownership history, and defect disclosures. When a consumer finds the vehicle they want, they can enter their information, select a delivery date, secure financing, add warranty coverage, make a down payment, and upload the necessary identification verifications to finalize the online order. The following shows how Defendants conceptualize the buying process as straightforward and convenient for consumers:



After a vehicle is ordered, Defendants' system generates the required supporting documents, populates the documents with the details of the transaction, and delivers the completed documents as electronic files. Many of the documents can be presented to the consumer, signed, stored, and transmitted electronically. Defendants aim to convince consumers of how easy it can be to purchase a used vehicle entirely online.

13.     Defendants acknowledge that to earn increased market share in the used car industry they must provide consumers with a trustworthy buying and selling experience: "confidence comes standard with every Vroom vehicle." Trust is even more important in the ecommerce experience because consumers cannot see the car in person prior to

purchase. To establish trust before a big purchase, Defendants make representations about the quality, safety, presence of imperfections, accident history, and possessing clean and marketable title for the used vehicles offered for sale. Defendants further promise to furnish and transfer proof of ownership in a timely manner to the buyers as required by law. Through these representations and more, Defendants seek to assure consumers that ecommerce is not only a viable car shopping method, but the preferable one.

14.     Defendants advertise and promise that each vehicle offered for sale has a clean and marketable title.  Defendants state unequivocally that "Clean Titles" are possessed by the Defendants for vehicles offered for sale.



15.     Defendants are not selling a fungible product. It is implied in every transaction that proof of ownership of that vehicle will be provided upon receipt of payment. A title serves as proof of ownership and is essential for selling or registering a vehicle. Registration is necessary to show that a car is legally permitted on public roads. Driving without a current registration is illegal and will subject buyers in Oklahoma, for

example, to fines and fees.

16.     As a licensed Texas dealership, Defendants are required by law to process and complete the title and registration process for their Texas customers within 30 days of purchase, or 45 days of purchase if the vehicle is financed. Defendants are required by law to collect the tax, title, and license fees for their Texas customers. Defendants charge consumers a fee for vehicle licensing and registration, which is disclosed as a line item on

**Purchase Details**

| | |
|---|---|
| Selling Price | $19,999.00 |
| Dealer's Inventory Tax | $33.14 |

The dealer's inventory tax charge is intended to reimburse the dealer for ad valorem taxes on its motor vehicle inventory. The charge, which is paid by the dealer to the county tax assessor-collector, is not a tax imposed on a consumer by the government, and is not required to be charged by the dealer to the consumer.

| | |
|---|---|
| State Sales Tax | $1,249.94 |
| Other State Taxes | $0.00 |
| Dealer Documentary Fee | $150.00 |

A documentary fee is not an official fee. A documentary fee is not required by law, but may be charged to buyers for handling documents relating to the sale. A documentary fee may not exceed a reasonable amount agreed to by the parties. This notice is required by law.*

| | |
|---|---|
| Title Fee | $33.00 |
| License & Registration Fee | $81.50 |
| Inspection Fee | $25.50 |
| Other State Fees | $0.00 |
| Vehicle Service Contract | $1,447.00 |
| Gap Coverage | $0.00 |
| Tire & Wheel Coverage | $471.00 |
| Delivery | $699.00 |
| **Subtotal** | $24,189.08 |

the final vehicle purchase invoice.

17.   Defendants deliver their vehicles with 60-day temporary tags issued by the DMV in Texas. The 60- day temporary tags allow consumers to drive their vehicles

immediately while they wait for the Defendants to complete the timely transfer of title and registration. The 60-day window is meant to give a reasonable buffer for an auto dealer to transfer their title to the purchaser and complete registration. However, Defendants fail to provide the timely transfer of title to many purchasers, including those in Oklahoma, which are required to register and title their vehicles within 30 days of purchase.

18. Nearly 80% of the vehicles Defendants sold in 2021 were customer sourced. Defendants' pandemic-era growth has been rapid, but they are cutting corners to realize those gains. Defendants are turning over their customer-sourced vehicles so quickly that they are reselling vehicles before they even obtain clear title. In so doing, Defendants are misrepresenting ownership of the vehicles they are listing for sale on their website. Defendants are not disclosing that the sale is subject to their ability to obtain clear title to the offered vehicle. Despite receiving numerous complaints from buyers, Defendants have informed purchasers, who had been hopelessly waiting months for title and registration, that they must return the vehicles because Defendants do not have clear title.

19. Consumers have complained that Defendants failed to timely register the change in ownership, leaving consumers with expired temporary tags and with no evidence of ownership. Defendants designed a system that fails to meet the Oklahoma legal requirements for timely transfer of the title and registration.

20. Defendants reportedly mislead consumers about their current ability to comply with the State's legal requirements for timely transfer of the title and registration. This all but guarantees that consumers do not understand that they are purchasing a good that they will not be able to

9

prove they own. The complaints evidence consumer shock and frustration—they are not given answers by Defendants when they inquire of the delays in processing their titles and registration. Many consumers have reported waiting as much as a year to receive the title to their purchased vehicle, and sometimes even longer. Consumers have compared their purchases from Defendants to "bricks," or "driveway ornaments" when it became unlawful for them to operate their vehicles.

21.     The failure to secure title and registration is also evident with, and the source of, additional deceptive acts for out-of-state consumers. After the expiration of the initial 60-day temporary tags, Defendants offer to provide their consumers, both in Texas and out-of-state, with a 30-day special temporary tag from the DMV. Defendants are limited to purchasing four 30-day temporary tags per customer.

22.     Defendants cannot assure their out-of-state consumers that the 30-day temporary tags are even valid in the consumer's home state. To the contrary, many out-of-state consumers have complained of multiple citations or impounded vehicles while displaying Texas temporary tags.

23.     Worse, Defendants claim they are only allowed to issue a 30-day temporary tag if the vehicle owner has insurance coverage consistent with minimum coverages required by Texas statute. Many states have lesser automobile insurance policy minimums. Defendants have forced out-of-state consumers to seek new insurance policies or change their insurance coverage, often with increased premiums, so Defendants can provide temporary tags to the out-of-state consumer while they try to sort out their own delay issues.

24.     Oklahoma consumers did not bargain for this undesirable position.  In fact, many Oklahoma consumers may not have purchased vehicles from Defendants if it meant they had to increase their insurance policy's minimum coverage simply to match Texas requirements and receive multiple 30-day temporary tags or risk driving their recently purchased vehicles illegally in Oklahoma. This issue is not disclaimed by Defendants at the front end of the sales transaction.

## ALLEGATIONS SPECIFIC TO PLAINTIFF

25.     On or about April 21, 2022, Plaintiff purchased a 2020 Kia Telluride SX bearing VIN number 5XYPHC9LG018338 (the "Vehicle") from the Defendants via its online website Vroom.com.

26.     Defendants represented that they had clean title to the subject Vehicle and it was an express and implied condition of the subject purchase between the Plaintiff and the Defendants.

27.     Plaintiff paid $47,124.50 via wire transfer for the purchase price and fees, which payment was received by Vroom.com.

28.     Defendants confirmed they received the wire transfer and that the purchase of the Vehicle was completed.

29.     Defendants delivered the Vehicle to the Plaintiff on April 28, 2022. Temporary tags were placed on the Vehicle with an expiration date of June 20, 2022, or 60 days after the delivery date, and promised to deliver title and registration paperwork to the Plaintiff prior to expiration of the temporary tag.

30.     Over the course of the next several weeks, Plaintiff made numerous attempts

via phone calls and emails to secure the title of the Vehicle.  Plaintiff was told on several occasions that a "case" was being opened, but that Plaintiff was never allowed to speak to a supervisor or someone actually in the title department.  Defendants claimed they did not allow for such conversations to take place, only that someone would be calling or emailing the Plaintiff within the next 24 hours.  Defendants eventually claimed there was a "mistake" in the Vehicle's title and they were working to correct it.

31.     Defendants refused and/or failed to deliver the title to the subject Vehicle. As of the date of the filing of the original Petition, Defendants had still not delivered the Title to the subject Vehicle.  The temporary tag expired on June 20, 2022, which is actually beyond the 30-day requirement under Oklahoma law.

32.     Defendants indicated that any additional tags would require certain insurance coverage beyond the legal minimum in Oklahoma, but then refused to provide any additional tags beyond the expiration of the original temporary tag.  As a result, Plaintiff paid for a vehicle but risked legal and other negative consequences from failing to register the Vehicle in question, failing to secure the Title in a timely and legal manner, and otherwise possess the Vehicle without any legal title whatsoever.

33.     Oklahoma law requires any purchaser of a motor vehicle within thirty (30) days from such purchase to make application to title and register such vehicle and pay required taxes and fees as required by Oklahoma law.  Oklahoma provides that any purchase of an out-of-state vehicle must also be registered and titled within Oklahoma within 30 days of the vehicle's entry into Oklahoma.  *See* 47 Okla. Stat. §1112.2; OAC 710:60-31.

34.     Plaintiff was forced to seek legal relief to obtain a title to legally drive the subject Vehicle.  Plaintiff filed an application in the District Court of Cleveland County, State of Oklahoma, Case No. CV-2022-2344, on June 22, 2022, to secure a Court Order to try and get a title based on the evidence of Plaintiff's purchase from Vroom.com.

35.     At the time of the filing of his original Petition, Defendants had failed to respond to Plaintiff's last attempt to secure the Vehicle's Title for over 6 weeks.  At the time of the filing of the original Petition, Defendants failed or refused to provide clean and marketable title to the subject Vehicle, despite Plaintiff paying the full purchase price to Defendants three months prior to filing suit.

36.     On or about August 15, 2022, approximately 4 months after purchasing the Vehicle, Plaintiff received via mail a copy of a Vroom Retail Purchase Agreement relating to his purchase of the Vehicle along with a Letter.  The Agreement was signed by Vroom and contained signed initials for Vroom but was unsigned by the Plaintiff.   The Letter accompanying the Agreement states:

> *Congratulations on your new purchase!*
>
> *Enclosed you will find the title and supporting documents for your vehicle purchase.  Please take this entire packet with you to your local DMV agency to obtain titling and registration instructions.*
>
> *Please refrain from signing your documents until you arrive at the DMV.*
>
> *This will ensure your signatures are placed correctly to avoid the delay and additional fees associated with obtaining a duplicate title from our department.*

37.     The Retail Purchase Agreement expressly states, in bold terms, that

*"we agree to transfer to you, and you agree to accept, Title and ownership of the Vehicle at Vroom's address given above."* The aforesaid statements, representations and conduct constitute an express warranty under Oklahoma and federal law. Defendant Vroom breached its express warranty to transfer title and ownership of the subject Vehicle to Plaintiff. Defendant Vroom also breached the implied warranty of title under 12A Okla. Stat. § 2-312.

38.     Section 6 of the Retail Purchase Agreement states then "*when Vroom transfers title and ownership of the Vehicle to you,*" you authorize the pickup of the vehicle from Vroom and delivery of such Vehicle to the purchaser. Here, Vroom failed to transfer title and ownership of the Vehicle to the Plaintiff before and after delivery of the Vehicle as promised in the Retail Purchase Agreement.

39.     From April until August 15, 2022, Plaintiff had no access to any documents he executed as part of the purchase process, which he completed on his cell phone. Vroom first sent a copy of the Retail Purchase Agreement to Plaintiff on August 15, 2022. Plaintiff reviewed such Agreement and the arbitration provisions contained therein. For many reasons, including the unconscionable nature of the arbitration provision at issue, Plaintiff rejected arbitration via written letter (the Arbitration Rejection Letter) dated September 12, 2022, which was sent within 30 days of receipt of the Retail Purchase Agreement.

## CLASS ACTION ALLEGATIONS

40.     Pursuant to 12 Okla. Stat. § 2023, Plaintiff brings this action on behalf of himself and the following proposed class:

*All individuals in the State of Oklahoma who purchased a motor vehicle from Defendants via Vroom.com since July 22, 2017 until June 22, 2022 who failed to receive from Vroom.com the motor vehicle legal title for any such vehicle within 30 days from the date of delivery.*

41.     Such vehicle owners have been damaged by the Defendant as follows:  (1) Defendants have breached the express and implied warranties to all proposed class members; and (2) Defendants' acts and omissions with respect to the failure to sell vehicles with marketable and legal title and/or failure to provide such title to purchasers are and have been contrary to the Oklahoma Consumer Protection Act.

42.     This action has been brought and may properly be maintained as a class action under 12 Okla. Stat. § 2023. Pursuant to 12 Okla. Stat. § 2023(A)(1), Plaintiff states that the proposed class is so numerous that joinder of all members is impracticable as a matter of law because the proposed class consists of purchasers of any motor vehicle from Vroom.com over the last 5 years.   Thus, the class consists, at least, of hundreds or thousands of potential members.   The exact number of Oklahoma purchasers should be easily obtainable from Defendants through the discovery process.   Therefore, the class is ascertainable.

43.     Pursuant to 12 Okla. Stat. § 2023(A)(2) there are questions of law or fact common to the class.   The proposed class expressly excludes any and all possible questions of law or fact that require specific and/or individualized inquiries.   Rather, the proposed class encompasses any and all practices or policies of Defendant that were generally applicable to all proposed class members including, but not limited to:  whether Defendant breached its express and/or implied warranties to sell a vehicle with clean and marketable

title and/or deliver clean and marketable title to the purchaser in a legally timely fashion; whether Defendants actions with respect to proposed class members constituted violations of the Oklahoma Consumer Protection Act.

44.     Pursuant to 12 Okla. Stat. § 2023 (A)(3), Plaintiff's claims against Defendants are typical of the claims of the proposed class because the conduct of Defendants with respect to the defect is identical with respect to Plaintiff as it is with respect to all other proposed class members because the issue is selling vehicles with clean title and delivering proof of such clean titles to purchasers in a legally timely manner.

45.     Pursuant to 12 Okla. Stat. § 2023 (A)(4), Plaintiff will fairly and adequately protect the interests of the class.  Plaintiff's interests do not conflict with those of the class and Plaintiff will fully and effectively represent the interests of the class.  Further, Plaintiff, as undersigned counsel, is qualified, experienced, and generally able to conduct this lawsuit and the Plaintiff's interests are not antagonistic to those of the class.

46.     Pursuant to 12 Okla. Stat. § 2023 (B)(3), the issues of law and fact common to members of the class predominate over any questions affecting only individual members. Therefore, a class action is superior to other available methods for the fair and efficient adjudication of this controversy.  The legal grievances of proposed class members are common to all class members, including Plaintiff.  If Defendants are liable to any class member on any of the questions of law outlined herein, they will automatically be liable to all class members.  A class action is clearly superior to the many different lawsuits which might be brought, raising the same legal claims against Defendants, burdening the courts, and potentially resulting in unjustly disparate outcomes.  *See also* 12 Okla. Stat. §

16

2023(B)(1)(A).

## COUNT I – Breach of Contract/Violations of the Oklahoma Uniform Commercial Code: Breach of Express and Implied Warranties.

47.   Plaintiff incorporates by reference all of the allegations pled in the foregoing paragraphs and brings this claim both individually and on behalf of all others similarly situated.

48.   Oklahoma has adopted the Uniform Commercial Code, including Article 2 governing sales of goods.  12A Okla. Stat. §§ 2-101 ff.

49.   Pursuant to the statutory definitions, Plaintiff and all other proposed class members were "buyers" as defined by 12A Okla. Stat. § 2-103(1)(a); Defendants were a "seller" as defined by 12A Okla. Stat. § 2-103(1)(c) and a "merchant" as defined by 12A Okla. Stat. § 2-104; and the vehicle purchases on Vroom.com by Plaintiff and all other proposed class members were transactions in "goods" as defined by 12A Okla. Stat. § 2-105(1).

50.   Pursuant to 12A Okla. Stat. § 2-312-313, Defendants' warranties regarding selling vehicles with a clean title and delivering clean and marketable title to purchasers in order for the buyers to register and title the vehicle bought from Defendants constitute an "express warranty" governed by the provisions of the Oklahoma Uniform Commercial Code.

51.   Pursuant to 12A Okla. Stat. § 2-312-314, an implied warranty of merchantability arose by operation of law with respect to vehicles sold to Plaintiff and all

other proposed class members.  Such warranty included the requirement that Defendants actually owned and possessed clean and marketable title for the vehicles Defendants sell to Oklahoma consumers.

52.   The Oklahoma state Uniform Commercial Code (UCC) provides that implicit in every sale is a warranty of title.  Specifically, under 12A Okla. Stat. § 2-312, in every contract for sale there is a warranty by the seller that the title conveyed is good and its transfer rightful.  This warranty also assures that the goods will be delivered free from any security interest or other lien or encumbrance unless the buyer has knowledge of the encumbrance at the time of contracting.  Defendants breached their express and implied warranties to Plaintiff and all other proposed class members by <u>not</u> furnishing a vehicle with clean and marketable title and failing to furnish such title in a legally timely manner to allow for timely and legal registration of the vehicles Defendants sold.

53.   Defendants also breached the implied warranty of merchantability by furnishing vehicles that did not "pass without objection" (due to the failure to provide clean and marketable title for any such vehicle sold) and were therefore not "fit for the ordinary purpose" for which vehicles are used and driven legally in Oklahoma, namely, as a legal and reliable means of transportation without fear of fine or punishment for driving such vehicle.

54.   Therefore, Plaintiff and all other proposed class members have been damaged by Defendants' breach of their express and implied warranties and are entitled to

compensation for the same.

## COUNT II – Oklahoma Consumer Protection Act

55.     Plaintiffs restate and incorporate all of the allegations set forth above.

56.     Defendants' wrongful actions toward Plaintiffs constitute deceptive and unfair trade practices under 15 Okla. Stat. §§ 752(13) and 752(14) of the Oklahoma Consumer Protection Act ("OCPA"), 15 Okla. Stat. § 751 *et seq*.  Defendants' deceptive and unfair trade practices are actionable unlawful practices pursuant to 15 Okla. Stat. § 753(20). The Oklahoma Supreme Court has held that "[b]ecause the OCPA is remedial in nature it is to be <u>liberally construed</u> to effectuate its underlying purpose."  *Patterson v. Beall*, 2000 OK 92, ¶ 28 (emphasis added).

57.     Plaintiff and prospective class members were all harmed by Defendants' actions and practice of selling vehicles and failing to complete the vehicle registration process as required by law, selling vehicles without clean and marketable title, failing to furnish clean and marketable title in a legally timely fashion, and/or failing to disclose or misrepresenting issues that will result in title transfer or registration delays as they become apparent.  Such conduct was in violation of the Oklahoma Consumer Protection Act's prohibitions, including, but not limited to, prohibitions against deceptive practices, practices that are contrary to public policy, and practices that are substantially injurious to consumers.

58.     Therefore, Defendants should be held liable for its violations of the Oklahoma Consumer Protection Act and Plaintiff and all other proposed class members should be compensated for their damages accordingly.

19

59.     Defendants' unlawful actions as described herein occurred in the course of Defendants' business and involved a consumer transaction as defined in 15 Okla. Stat. § 752(2).

60.     Plaintiffs have suffered actual and consequential damages as a direct result of Defendants' deceptive and unfair trade practices and are entitled to an award of actual and punitive damages against Defendants for their willful and wanton conduct.   In addition, Plaintiffs are entitled to recover statutory civil monetary penalties against Defendants for each wrongful or deceptive act as well as attorney fees and costs as set forth in 15 Okla. Stat. § 761.1.

## COUNT III – VIOLATIONS OF FEDERAL
## MAGNUSON-MOSS WARRANTY ACT

61.     Plaintiff incorporates by reference all of the allegations pled in the foregoing paragraphs and brings this claim both individually and on behalf of all others similarly situated.

62.     Defendant Vroom has adopted expressly or implied Magnuson-Moss Warranty Act violations in the purchase agreement detailed above, which includes express and implied warranties arising under state law including the warranty of title. Defendants have therefore expressly assumed liability for any substantiated claims brought under such causes of action.

63.     Plaintiff and all other proposed class members are "consumers" as defined at 15 U.S.C. § 2301(3); Defendant Vroom is both a "supplier" as defined at 15 U.S.C.

20

§2301(4) an a "warrantor" as defined at 15 U.S.C. § 2301(5); and the vehicles that are the subject of this lawsuit are "consumer goods" as defined at 15 U.S.C. § 2301(1).

64.    Therefore, pursuant to the foregoing paragraph, the warranty claims in this lawsuit are covered by the federal Magnuson-Moss Warranty Act ("the Act"), 15 U.S.C. §§ 2301 *et seq*., as well as by Oklahoma warranty laws.  Specifically, Defendant Vroom's express warranty, as described more fully above, is governed by the provisions of the Act and is a "full warranty" as defined at 15 U.S.C. § 2303(a)(1) and Defendant's implied warranty of title is also governed by the provisions of the Act pursuant to 15 U.S.C. § 2308.

65.    Defendant Vroom breached both its express warranty and its implied warranty of merchantability and title with respect to Plaintiff and all other proposed class members.  Plaintiff specifically incorporates all factual allegations pled herein with respect to Defendant Vroom's conduct vis-à-vis its warranties.  Under 12A Okla. Stat. § 2-312, in every contract for sale in Oklahoma there is a warranty by the seller that the title conveyed is good and its transfer rightful.  This warranty also assures that the goods will be delivered free from any security interest or other lien or encumbrance unless the buyer has knowledge of the encumbrance at the time of contracting.  Despite repeated demands and despite Plaintiff complying with all reasonable terms and conditions imposed on him by Defendant Vroom, Defendant Vroom failed to deliver title and/or refused to remedy the failure to provide title within a reasonable time.

66.    As a result of the above, Defendant Vroom has committed one or more

unfair or deceptive acts or practices before, during or after a consumer transaction between Plaintiff and/or class members.

67.     As a result of Defendant Vroom's breaches of express and implied warranties, including but not limited to the breach of the implied warranty of merchantability and the implied warranty of title, and Defendant Vroom's failure to remedy same within a reasonable time and without charge to Plaintiff, Plaintiff and proposed class members have suffered and will continue to suffer damages, including but not limited to, the loss of the benefit of the bargain, embarrassment, humiliation, mental distress, and anxiety, costs and attorney fees incurred in obtaining relief from Defendant Vroom, together with the additional damages to be proven at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests judgment against Defendants as follows:

A.     Actual, consequential, punitive, and other damages, in an amount to be proven at trial;

B.     For pre judgment and post interest on such damages;

C.     For expenses of the litigation, including costs and attorney fees;

D.     Certification of the Class;

E.     Appointment of the undersigned as counsel for the Class; and

F.     For such other relief as Plaintiff may be entitled, including any legal remedies that may be appropriate under the claims asserted above.

Respectfully Submitted,

*s/Blake Sonne*
Blake Sonne, OBA #20341
SONNE LAW FIRM, PLC
P.O. Box 667
Norman, Oklahoma 73070
(405) 664-2919
(405) 701-5995 (fax)
blake@sonnelawfirm.com
**PLAINTIFF PRO SE**

**JURY TRIAL DEMANDED**
**ATTORNEY LIEN CLAIMED**

## CERTIFICATE OF SERVICE

This certifies that on the 12th day of October, 2022, I electronically transmitted the foregoing document to the Clerk of Court using the ECF system for filing and will be automatically transmitted via email to the following ECF registrants:

William O'Connor, OBA #13200
Jerrick L. Irby, OBA #30876
Jon A. Epstein, OBA #13274
Carson Glass Lamle, OBA #32783
HALL, ESTILL, HARDWICK, GABLE, GOLDEN & NELSON, P.C
**ATTORNEYS FOR DEFENDANTS**

*s/Blake Sonne*